FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 14 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHANDRA NORTON | Criminal Information<br><br>No. 1:20-CR-297 |

THE UNITED STATES ATTORNEY CHARGES THAT:

## COUNT ONE
*(Wire Fraud Conspiracy – 18 U.S.C. § 1349)*

1. Beginning in or around April 2020, and continuing until at least in or around June 2020, in the Northern District of Georgia and elsewhere, the defendant, CHANDRA NORTON, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with Individual 1, and others known and unknown to the United States Attorney, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, with the intent to defraud, caused interstate wire

communications to be made, in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## Background

It is relevant to the Information that during the above-listed time period:

2. NORTON, a resident of Cherokee County, was the owner and controller of certain corporate entities based in the Northern District of Georgia, including: Camken Inc.; Camken Inspections, LLC; Camken Consulting, Inc.; Linear Earth LLC; and Robertson Norton Inc. (collectively, the "Norton Entities").

3. Individual 1, a resident of Fulton County, was the owner and controller of certain corporate entities based in the Northern District of Georgia.

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

6. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business on certain permissible expenses — payroll costs, interest on mortgages, rent, and utilities. The PPP

allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

8. "Bank A" was a financial institution based in Salt Lake City, Utah, that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A was an approved SBA lender of PPP loans.

9. "Bank B" was a financial institution based in Raleigh, North Carolina, that was insured by the FDIC. Bank B was an approved SBA lender of PPP loans.

10. "Bank C" was a financial institution based in Hilton Head, South Carolina, that was insured by the FDIC. Bank C was an approved SBA lender of PPP loans.

11. "Bank D" was a financial institution based in Phoenixville, Pennsylvania, that was insured by the FDIC. Bank D was an approved SBA lender of PPP loans.

**Manner and Means of the Conspiracy**

12. Beginning in or around April 2020, NORTON and Individual 1 submitted, and caused the submission of, at least eleven false and fraudulent

PPP loan applications on behalf of the Norton Entities, at least five of which were funded by Bank A, Bank B, Bank C, and Bank D (collectively, the "PPP Loan Applications").

13. As part of the PPP Loan Applications, defendant NORTON submitted, and caused the submission of, false and fraudulent documentation purporting to substantiate the monthly payroll expenses and number of employees contained in the PPP Loan Applications, including false and fraudulent financial documents and Internal Revenue Service Forms in which payroll expenses were fabricated and inflated.

14. Among other things, defendant NORTON falsely and fraudulently: overstated the number of employees for the Norton Entities; represented that the Norton Entities had employees for whom they paid salaries and payroll taxes, or paid independent contractors, when in fact, they did not; and represented that these businesses were in operation as of in or around February 2020.

15. NORTON also falsely certified, on the loan application forms themselves, that the funds she sought in the PPP Loan Applications would be used to retain workers and fund payroll, and to make mortgage interest payments, lease payments, and utility payments, when, in fact, as defendant NORTON then and there well knew, she intended to divert the funds that she

obtained from the PPP program for her personal use and benefit, rather than for the benefit of her employees.

16. On or about April 22, 2020, defendant NORTON used PPP loan funds to pay her own personal expenses, by withdrawing approximately $172,052, and using the money to purchase a motor vehicle. Norton also wired PPP loan funds to an investment brokerage account she controlled.

17. Defendant NORTON and Individual 1 also sent email communications to the banks inquiring about the status of PPP Loan Applications in which they made additional false representations and misleading statements.

18. Through these materially false and fraudulent statements in the PPP Loan Applications, in documentation supporting the PPP Loan Applications, and in communications with the financial institutions, defendants NORTON and Individual 1 caused Bank A, Bank B, Bank C and Bank D to fund the PPP Loan Applications, which funds were disbursed via interstate wire communications. These loans included those set forth below:

| APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|
| April 18, 2020 | Transfer to an account associated with the CamKen Consulting, Inc. application in the approximate amount of $351,000 |

| APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|
| April 22, 2020 | Transfer to an account associated with the Linear Earth LLC application in the approximate amount of $1,705,300 |
| May 2, 2020 | Transfer to an account associated with the Robertson Norton Inc. application in the approximate amount of $1,761,485 |
| May 4, 2020 | Transfer to an account associated with the CamKen Inspections, LLC application in the approximate amount of $1,976,277 |
| May 11, 2020 | Transfer to an account associated with the CamKen, Inc. application in the approximate amount of $1,990,400 |

19. The conspiracy and fraudulent scheme carried out by defendant NORTON through the Norton Entities resulted in a loss of at least approximately $7,785,062 to the PPP program. Because the PPP loan funds were guaranteed by the SBA, NORTON and Individual 1 defrauded Bank A, Bank B, Bank C, Bank D, and the SBA.

All in violation of Title 18, United States Code, Section 1349.

## Forfeiture Provision

1. Upon conviction of the offense alleged in this Information, the defendant, CHANDRA NORTON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(a)(2), any

property, real or personal, that constitutes or is derived from proceeds traceable to such offenses, including but not limited to the following:

    a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Information.

    b. VEHICLE:

        i. One 2020 Land Rover Range Rover Autobiography, VIN SALGV5SE1LA589766, registered in the name of Linear Earth LLC.

2. If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

BYUNG J. PAK
  *United States Attorney*

*Bernita B. Malloy*

BERNITA MALLOY
  *Assistant United States Attorney*
Georgia Bar No. 718905

*Drew Bradylyons*

DREW BRADYLYONS
  *Trial Attorney*
Fraud Section, Criminal Division
U.S. Department of Justice
New York Bar No. 4797049

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

9